UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Minnesota Right to Life, et al., | Court File No. 25-CV-2476 (NEB-DTS) |
| Plaintiffs, | |
| vs. | |
| Faris Rashid, et al., | **DECLARATION OF JEFFREY SIGURDSON** |
| Defendants. | |

I, Jeffrey Sigurdson, declare as follows:

1. I am the executive director of the Minnesota Campaign Finance and Public Disclosure Board. I have been employed by the Board since 2000 and served as its executive director since 2016. I make this declaration based on my personal knowledge, review of public documents, and review of documents the Board maintains in the ordinary course of business.

2. The grassroots lobbying disclosure requirement at issue here was enacted in 2023 as part of a broader effort to modernize Minnesota's lobbying disclosure laws. Under Minn. Stat. § 10A.02, subd. 8(a), the Board may offer legislative recommendations on updates to its statutes. In 2019, the Board began working on the recommendations passed in 2023. During those four years, the Board collected input from various stakeholders in the lobbying community.

3. One of the Board's driving goals when it began updating the statutes was to modernize required disclosures to make them more useful to the public. As relevant to the vendor disclosures at issue, this manifests in several important ways, which I detail below.

1

4. Grassroots lobbying is the act of attempting to influence the official actions of public officials indirectly, by requesting members of the public to contact public officials on a given issue. In contrast to direct lobbying—where an entity hires a professional lobbyist to communicate with the public officials on the entity's behalf—grassroots lobbying encourages members of the public to contact public officials and ask for action on issues in which the entity has an interest. In effect, grassroots lobbying turns the public into a tool for lobbying on an issue.

5. Grassroots lobbying has grown in recent years. In 2024 (the first year for which the Board has Minnesota-specific data), entities that engaged in grassroots lobbying ("principals") reported spending $5,542,345.78 on grassroots lobbying. Unlike campaign advertising, however, grassroots advertisements do not require disclosing who paid for an advertisement within the advertisement, such as "Prepared and Paid for by Obama for America." Indeed, I am unaware of any state that imposes such a requirement for grassroots advertising. And before 2023, principals were not required to separately disclose advertising expenses in Minnesota. Instead, they were only required to report their total amount spent on lobbying and how much of that amount was spent on lobbying the Minnesota Public Utilities Commission. *See* Minn. Stat. § 10A.04, subd. 6 (2022). But they were not required to separately disclose how much was spent on efforts to encourage the public to influence their public officials.

6. This lack of separate disclosure created a blind spot in Minnesota's lobbying disclosure laws. Although lobbyist disclosure reports meant that the public could know when principals were using hired lobbyists to influence public officials, there was no way

2

for the public to know when principals were attempting to use grassroots efforts to do so. There was thus also no way for public officials to know whether comments from the public on an issue were organic or the product of an artificially stimulated campaign by an interest group.

7. Vendor disclosures, specifically, play an important role in furthering the public's interest in understanding who is attempting to influence them. Those disclosures enable the public to connect advertisements they see with the principals behind them. For example, if a Minnesotan saw an advertisement in the Star Tribune in mid-May in 2024 asking the public to contact their legislator and advocate against the passage of an abortion referendum, that person could go to the Board's website and see that Minnesota Citizens Concerned for Life was behind that advertisement and weigh the message accordingly. Without the vendor disclosure requirement, making such connections—and therefore evaluating the weight to give such messages—would not be possible. The full list of disclosures is available on the Board's website[1] and a copy of disclosures as of July 18, 2025, is attached as of **Exhibit 1**.

8. The vendor disclosures thereby help solve an information asymmetry that otherwise exists between principals/lobbyists and the public. Professionals who regularly attempt to influence public officials understand if and when they are acting on special interests' behalf. But when members of the public see and act on grassroots lobbying advertisements, the only way they can know who is attempting to influence their behavior

---

[1] https://cfb.mn.gov/reports-and-data/searches-and-lists/other-reports-and-lists/current-lists/?_uri=reports/current-lists/#/principal-historical-advertising/all/

3

is if those principals are required to disclose what advertisements they are behind. That knowledge in turn allows the public to learn more about those entities, which can help the public understand the scope, scale, funding, and professionalization of an advertising campaign.

9. Vendor disclosure also enables the public to know if multiple entities are coordinating on a particular subject. For example, if multiple principals hire the same vendor to advance related messages, the vendor disclosure requirement enables the public to see that coordination and evaluate the messages accordingly.

10. Vendor disclosure also enables the public to know if vendors are discriminating between messages (and, potentially, messengers) and weigh the advertisements from that vendor accordingly. From my experience dealing with campaign finance, for example, I know that there are some vendors that are favored by some political parties while different vendors are favored by other political parties. In the campaign finance realm, however, vendors must charge a fair market rate for advertising or treat any discount as an in-kind campaign contribution. But no such prohibition applies to grassroots lobbying. The same vendor can charge vastly different rates for the same amount of advertising based on whether the vendor agrees or disagrees with its message. By requiring vendor disclosure, however, Minnesota enables the public to see if particular vendors are more prone to place advertisements by one ideology or another and then weigh those advertisements accordingly.

11. Finally, the vendor disclosure requirement allows the public to know if a

principal is actually seeking broad based public support on an issue versus attempting to motivate only a specific audience. Different advertising vendors reach different audiences. If a principal is primarily using a vendor that caters to a specific audience, having that information helps both the public (and the public officials they contact) better evaluate how broad of support purported grassroots lobbying truly has.

12. In addition to its benefits for the public, the vendor disclosure requirement also assists legislators contextualize the outreach they receive from constituents. When a lobbyist talks to a legislator, the legislator knows they are speaking with a lobbyist, who that lobbyist is, and who is paying that lobbyist. But when a constituent calls their legislator because they were influenced by grassroots lobbying efforts that encouraged them to do so, the legislator cannot know what principal encouraged that constituent to do so, and how, without grassroots lobbying disclosure, including the vendor disclosure requirement.

13. I have reviewed the declaration of Benjamin Dorr (Doc. 9) and its exhibit (Doc. 9-1.) That exhibit is a copy of letters that were sent to the two plaintiffs in this matter after they failed to file the reports required by Minn. Stat. § 10A.04, subd. 6. As a matter of course, the Board sends out such letters to all lobbyist principals who fail to file those reports.

PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT EVERYTHING I HAVE STATED IN THIS DOCUMENT IS TRUE AND CORRECT.

Dated: July 18, 2025

_____
JEFFREY SIGURDSON